IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **STEVE EMERY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:20-CV-3519-L** |
| | § | |
| **SUN CUPID TECHNOLOGY (HK)** | § | |
| **LIMITED; SUN CUPID AMERICA,** | § | |
| **LLC; NOETIC, INC.; SIT PAN JIT** | § | |
| **a/k/a MICHAEL SIT; and DANNY** | § | |
| **YORK HOI SIT a/k/a DANNY SIT,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: Defendant Noetic, Inc.'s Motion to Dissolve or Modify Ex Parte Temporary Restraining Order (Doc. 10), filed December 7, 2020; Plaintiff Steve Emery's Consolidated Motion to Amend and Convert Ex Parte TRO to a Preliminary Injunction (Doc. 14), filed December 10, 2020; and Plaintiff's Opposed Motion for Leave to Amend Appendix (Doc. 19), filed December 11, 2020.  For the reasons herein explained, the court **denies** Defendant Noetic, Inc.'s Motion to Dissolve or Modify Ex Parte Temporary Restraining Order (Doc. 10); **grants** Plaintiff Steve Emery's Consolidated Motion to Amend and Convert Ex Parte TRO to a Preliminary Injunction (Doc. 14) to the extent set forth in this opinion; and **grants** Plaintiff's Opposed Motion for Leave to Amend Appendix (Doc. 19).

## I.     Factual and Procedural Background

Plaintiff Steve Emery ("Plaintiff" or "Mr. Emery") brought this action on December 1, 2020, against Defendants Sun Cupid Technology (HK) Limited ("Sun Cupid HK"); Sun Cupid America,

LLC ("Sun Cupid America" or "Sun Cupid US"); Noetic, Inc. ("Noetic"); Sit Pan Jit a/k/a Michael Sit ("Michael Sit"); and Danny York Hoi Sit a/k/a Danny Sit ("Danny Sit") (collectively, "Defendants"), asserting claims for breach of several contracts and fraudulent transfer in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA") of the Texas Business & Commerce Code § 24.001, *et seq*. Specifically, Plaintiff alleges the following three causes of action under Texas law:  Count 1—breach of contract (Promissory Note) against Sun Cupid HK; Count 2—breach of contract (Guaranty and Security Agreement; and Employment Agreement) against Noetic; and Count 3—fraudulent transfer in violation of TUFTA against all Defendants.

Plaintiff alleges breaches of the Promissory Note between him and Sun Cupid HK and the Guaranty and Security Agreement between him and Noetic that were executed as part of a Stock Purchase Agreement ("SPA"), pursuant to which Mr. Emery agreed to sell 1,000,000 shares of his company Noetic to Sun Cupid HK for $4,000,000.  In exchange, Sun Cupid HK agreed, among other things, to pay this amount to Mr. Emery in three installments on December 30, 2019 ($500,000); November 30, 2020 ($2 million); and November 30, 2022 ($1.5 million).  All of the agreements at issue in this case were executed on December 30, 2019, except for the Employment Agreement between Mr. Emery and Noetic, which was executed on December 31, 2019, and includes a mandatory term of employment from January 1, 2020, to December 31, 2022.  Danny Sit signed all of the agreements on behalf of Sun Cupid HK and Noetic.  The Guaranty and Security Agreement contains two provisions indicating that the Guaranty and Security Agreement is enforceable against each person signing it.

With respect to his cause of action against Sun Cupid HK for breach of the Promissory Note, Plaintiff alleges that he performed as required by delivering his 1,000,000 shares of Noetic capital

stock to Sun Cupid HK and cooperating to carry out the terms of the SPA and other agreements and documents executed in connection with the Promissory Note. Plaintiff alleges that Sun Cupid HK breached by: (1) purporting to terminate the SPA, and by extension, the payment due under the Promissory Note; (2) failing to pay him as required by the Promissory Note; and (3) failing to cooperate in carrying out the terms of the agreements and documents executed in connection with the SPA. As a result, Plaintiff alleges that he has suffered damages as a direct and proximate result of Sun Cupid HK's material breaches.

Regarding his cause of action against Noetic for breach of the Guaranty and Security Agreement and the Employment Agreement, Plaintiff similarly alleges that he performed his obligations under both agreements as required and was damaged as a result of Noetic's material breaches: (1) in failing to fulfill its obligations as Guarantor of the $4 million debt owed by Sun Cupid HK under the Promissory Note; (2) in failing to maintain collateral in accordance with the Security Agreement to satisfy its obligations as Guarantor; and (4) in effectively terminating his employment before December 31, 2022, in violation of the Employment Agreement.

Plaintiff alleges that the actual or anticipatory breaches of these agreements are evidenced in large part by the letter he received from Michael Sit on November 25, 2020, the day before Thanksgiving. As chairman of Sun Cupid HK, Michael Sit states that the letter serves as notice that the SPA "shall be terminated, effective November 30, 2020"; that "we cannot proceed with the transaction"; and that "[w]e will cooperate with any and all document execution to release or return existing shares held by Sun Cupid [HK in Noetic]." Ex. G to Pl.'s Compl.[1] His use of "we" four

---

[1] This same letter was admitted as an exhibit during the hearing conducted by the court on December 14, 2020.

**Memorandum Opinion and Order - Page 3**

times in this letter appears to refer collectively to Sun Cupid HK, himself, and Danny Sit ("the

Sits").

Michael Sit justifies the termination of the SPA and decision not to proceed with the

transaction by pointing to Noetic's "struggle[] through 2020 and COVID-19," which "has created

difficult headwinds under the current situation." *Id.*   The letter goes on to state:

> When the original purchase was discussed and agreed to, there were significantly
> different assumptions on the underlying balance sheet.  Through the completion of our
> audit process, we have since discovered that [Noetic] has a different net asset
> calculation that previously expected.  Given the change in facts, we cannot proceed
> with the transaction.
>
> Sun Cupid [HK] believes that Noetic is no longer a going concern and as a
> large creditor, would recommend bankruptcy proceedings or another restructuring.
> Given the severe lateness and failure to pay amounts owed to Sun Cupid [HK], Sun
> Cupid [HK] has decided to stop all shipments of goods to [Noetic] in December. Until
> [Noetic] can demonstrate sufficient resources, the exclusive reseller rights to Noetic,
> Inc. are terminated effective immediately.
>
> Under a new proposed structure, Sun Cupid [HK] is considering creating a
> Vice President of Sales role for a new entity. The general parameters are: $150,000
> annual salary, 3-year term with mutual 60 days termination, and a 2% sales
> commission.  If you are interested in this please let us know so we can discuss next
> steps.

*Id.*

Plaintiff filed this action the following Tuesday on December 1, 2020.  Plaintiff alleges that

none of the reasons stated in this letter are appropriate grounds for termination under the SPA or the

Promissory Note under which all defenses were waived, and that bankruptcy by or restructuring of

Noetic would constitute Events of Default under the Promissory Note.  Bankruptcy (voluntary or

involuntary), insolvency, going out of business, dissolution or liquidation of Noetic would also

constitute Events of Default under the Guaranty and Security Agreement, which result in all

obligations and indebtedness by Noetic becoming immediately due and payable without demand or

notice.  Ex. C ¶¶ 19-20 to Pl.'s Compl. Plaintiff further alleges that one shipment of over $2 million in goods slated for a key Noetic customer has not been shipped by Sun Cupid HK, and the letter indicates Sun Cupid HK's intention not to ship these or other goods, which is problematic since Sun Cupid HK is Noetic's major supplier of the products it sells to its customers.  Finally, Plaintiff alleges that the letter purports to terminate his employment contract with Noetic by offering him an alternative lower salary and position with a new company.

Regarding his fraudulent transfer claim, Plaintiff alleges, based on "information and belief," that Sun Cupid was recently established on October 21, 2020, as part of a plan by Danny and Michael Sit to bankrupt Noetic, wipe away the debt owed to him under the various agreements, and transfer any remaining assets in Noetic to the new entity. Pl.'s Compl. ¶ 44. Plaintiff further alleges, on "information and belief," that Sun Cupid HK is billing Noetic clients directly to avoid having the accounts receivable on Noetic's books to circumvent the Guaranty and Security Agreement. *Id.* ¶ 46.  In addition, Plaintiff alleges that, on November 17, 2020, shortly before the second installment of $2 million was due, Noetic wired $725,762.50 to Sun Cupid HK, leaving only approximately $1,300 in Noetic's Merchants Bank account and reducing Noetic's cash reserves to less than $500,000.

For relief, Plaintiff seeks an award of damages, prejudgment and postjudgment interest, and attorney's fees.  He also requested injunctive relief in the form of an *ex parte* temporary restraining order ("TRO") to prevent Defendants from further depleting resources and the balance in Noetic's Merchants' account below $1 million without court approval, transferring funds of Noetic out of the district to avoid their contractual obligations, and refusing to ship inventory to Noetic pursuant to normal procedures. The Complaint is accompanied by a verification that is signed by Mr. Emery,

**Memorandum Opinion and Order - Page 5**

and a separate Motion for Emergency Ex Parte Temporary Restraining Order (Doc. 3), which includes a certification regarding the necessity of issuing a TRO on an ex parte basis to prevent Defendants from depleting and transferring funds to Hong Kong outside of the reach of the court and in further breach of the parties' agreements.

On December 1, 2020, the court granted Plaintiff's Motion for Emergency Ex Parte Temporary Restraining Order, issued an ex parte TRO ("Ex Parte TRO") (Doc. 8), and scheduled a hearing in accordance with Federal Rule of Civil Procedure 65(b)(3). All Defendants were provided with notice of the Ex Parte TRO and hearing, and all parties were allowed to submit briefs as to whether the Ex Parte TRO should be continued or converted to a preliminary injunction. Only Noetic appeared through counsel to contest the Ex Parte TRO and its conversion to a preliminary injunction.

Noetic's reasons for requesting the court to dissolve or modify the Ex Parte TRO are included in a motion it filed on December 7, 2020 (Doc. 10). On the same date, Noetic filed a separate opposition to the Ex Parte TRO (Doc. 11), which is substantially similar to its motion to dissolve. On December 10, 2020, Plaintiff followed with a consolidated motion to convert the Ex Parte TRO to a preliminary injunction and response in opposition to Noetic's motion to dissolve (Doc. 14). Plaintiff also filed an opposed motion for leave on December 11, 2020 (Doc. 19), to amend the appendix filed the day before in support of its consolidated motion and opposition to Noetic's motion to dissolve.

On December 14, 2020, the court conducted a hearing to determine whether the Ex Parte TRO should be: (1) continued or converted to a preliminary injunction, pursuant to Rule 65(b)(2) to maintain the status quo and prevent Defendants from engaging in certain conduct during the

course of this litigation; or, alternatively, (2) dissolved or modified under Rule 65(b)(4) in light of Noetic's motion and opposition.  Mr. Emery, Noetic, and Danny Sit attended the hearing and were represented by counsel.  Plaintiff and Noetic both submitted evidence for the court's consideration.[2] Two witnesses, who were called by Plaintiff's counsel, testified in the hearing—Mr. Emery and Ms. Raquel Coronel, an employee of Noetic.

After considering the parties' motions, briefs, the evidence, record, and applicable law, the court concludes for the reasons that follow that Plaintiff has demonstrated his entitlement to a preliminary injunction as to all Defendants to maintain the status quo and preserve the court's jurisdiction during the pendency of this action because a meaningful decision on the merits would be impossible without an injunction to prevent the further dissipation and transfer of Noetic and its assets, the only collateral securing Sun Cupid HK's performance under the SPA and Promissory Note.  Additionally, if Sun Cupid HK is allowed to walk away from the parties' agreements and return its shares in Noetic, Mr. Emery's only remedy under the Employment Agreement with Noetic would be to seek reimbursement from his own company (Noetic) for business decisions made by Sun Cupid HK and the Sits while they controlled Noetic—which is no remedy at all.  Allowing Sun Cupid HK to abruptly stop all shipments of product to Noetic in light of Noetic's already stressed financial condition would also reward Sun Cupid HK and the Sits for its mismanagement of Noetic and the situation it has created.  Moreover, it would bring about a significant change in the way Sun Cupid HK and Noetic have previously done business on a continuing  balance basis, and such a change, in turn, would deprive Noetic of the very income it needs to remain viable and satisfy its obligations to Mr. Emery and others.

---

[2] Plaintiff's Exhibits A-D and F-M; and Defendant's Exhibit A were admitted during the hearing.

## II.     Standard for Injunctive Relief

There are four prerequisites for the extraordinary relief of a TRO or preliminary injunction.

A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction [or TRO] will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida  v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction or TRO can be granted.  *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet any of the four requirements, the court cannot grant the preliminary injunction or TRO.

## III.     Noetic's Motion to Dissolve or Modify Ex Parte TRO (Doc. 10)

Noetic contends that Plaintiff failed to satisfy the requirements for issuance of a TRO without prior notice under Rule 65(b), and that the Ex Parte TRO entered by the court should, therefore, be dissolved or modified.[3]  Specifically, Noetic takes issue with the verification submitted by Mr. Emery in conjunction with his Complaint and contends that it is legally deficient.   In addition, Noetic argues that Plaintiff has not established a likelihood of success on the merits of his fraudulent transfer claim.

---

[3] In its motion, Noetic focuses primarily on dissolving the Ex Parte TRO and does not explain what, if any, modifications should be made to the terms of the Ex Parte TRO issued by the court, other than arguing broadly that the relief awarded should be more narrow for purposes of maintaining the status quo during this litigation. The court addresses this argument in the section dealing with the threatened harms to the parties.

A.      **Adequacy of Plaintiff's Verification**

The Verification signed by Mr. Emery and dated November 30, 2020, that was filed in connection with his Complaint and request for an ex parte TRO states as follows:

**VERIFICATION**

I DECLARE AND AFFIRM UNDER PENALTIES OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.

Pl.'s Compl. (Doc. 2 at PageID16).[4]  Noetic contends that, because the verification is based on "information and belief," it was not sufficient to support issuance of the Ex Parte TRO.  Noetic cites four cases from the First, Third, and Sixth Circuits, and the Western District of Michigan for this proposition.  As correctly noted by Plaintiff, these cases are distinguishable because the verifications in these cases were not made under penalty of perjury. Noetic also cites *Marron v. Ream*, 2006 WL 2734267 (S.D. Tex. May 8, 2006), but this case did not involve a verified pleading under Rule 65. It dealt with the statutory and pleading requirements under Rule 23.1 for derivative shareholder actions.

Rule 65(b)(1) provides that the court may issue a TRO without notice to the adverse party only if  "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  By its own terms, Rule 65(b)(1) does not expressly require that *all* allegations in a complaint be verified, only those factual allegations necessary to clearly establish that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.  Only paragraphs 44 and 46 of Plaintiff's Complaint, which pertain to his

---

[4] "PageID" refers to the electronically filing page number.

fraudulent transfer claim and Defendants' alleged motives, indicate that they are based on "information and belief." The court's Ex Parte TRO, on the other hand, was based on Plaintiff's substantial likelihood of succeeding on the merits of his breach of contract claims, not his fraudulent transfer claim. The court also interpreted Plaintiff's motion for an ex parte TRO as such.

Additionally, while courts are generally reluctant to issue preliminary injunction orders "[w]he[n] the moving party substantiates his side of a factual dispute on information and belief,"[5] the verification in this case is not limited solely to information and belief. It is also based on Plaintiff's personal knowledge of the factual allegations in his Complaint, which are sufficiently detailed and made under penalty of perjury.[6] Moreover, the relevant facts at issue are not disputed. Noetic does not dispute any of Plaintiff's allegations regarding the parties' agreements or the conduct that forms the basis of his allegation that Sun Cupid HK and Noetic breached the agreements. Noetic does not deny that it recently transferred a large amount of money to Sun Cupid HK or that it did so a short time before terminating the SPA and before its second installment payment to Mr. Emery was due. Noetic only takes issue with Plaintiff's allegation that the recent wire transfer was fraudulent or improper. This would only be relevant, however, if the Ex Parte TRO was based on Plaintiff's fraudulent transfer claim.

Likewise, Noetic does not dispute that Sun Cupid US was established by Danny Sit on October 21, 2020, a short time before Michael Sit terminated the SPA, expressed the belief that

---

[5] *Marshall Durbin Farms, Inc. v. National Farmers Org., Inc.*, 446 F.2d 353, 357 (5th Cir. 1971).

[6] *Compare Martinez Dona v. Perez Castilblanco*, 3:17-CV-2469-L, 2018 WL 928976, at *8 (N.D. Tex. Feb. 16, 2018), in which this court denied a TRO and gave little or no weight to the unsupported, conclusory statements in the Petition and Petitioner's affidavit because the Petition was not verified, and, while he submitted an affidavit in support of his Petition, the affidavit was not sworn to under penalty of perjury and merely stated that it was made on "the best of my knowledge and belief." Key disputed statements in the affidavit were also unsupported and conclusory.

Noetic was no longer a financially viable going concern, and proposed a new business structure under which Sun Cupid HK would create a new position for Mr. Emery in a new company for substantiallyy less compensation than he was making under his Employment Agreement with Noetic.  In addition, Noetic does not dispute and has not presented any evidence to refute the allegation that Danny Sit, who is an officer of both Sun Cupid HK and Noetic, directed Noetic's staff to have Sun Cupid HK bill a large Noetic client directly for product and services purchased from Noetic rather than have Noetic bill for the products and services. Noetic may argue that there is a plausible explanation for all of these events that are alleged to have occurred before Sun Cupid HK terminated the SPA, and that none of these events were improper or motivated by fraud.  Absent convincing evidence to the contrary, however, the court is free to draw its own conclusions regarding the import of the activities described in Plaintiff's Complaint in determining whether the requirements for injunctive relief have been met. Thus, this is not a situation in which the movant is attempting to substantiate his side of a factual dispute on information and belief because Noetic does not dispute the vast majority of allegations in Plaintiff's Complaint.  Accordingly, dissolution of the Ex Parte TRO on this ground is not warranted.

### B.      Plaintiff's Substantial Likelihood of Succeeding on His Fraudulent Transfer Claim

Noetic devoted much of its motion and argument during the December 14, 2020 hearing to its contention that Plaintiff's fraudulent transfer claim, as pleaded, is deficient. Again, the sufficiency of Plaintiff's fraudulent transfer claim is not relevant to the court's analysis, and it expresses no opinion regarding the merits of this claim, as its issuance of the Ex Parte TRO and its determination that Plaintiff is entitled to a preliminary injunction are based on the strong likelihood

that he will succeed on the merits of his breach of contract claims.  To the extent the court considered any allegations made in connection with Plaintiff's fraudulent transfer claim or evidence supporting such claim, it did so only if such allegations or evidence pertained to the other requirements for injunctive relief.  Dissolution of the Ex Parte TRO on this ground is, therefore, not warranted.

## C.    Irreparable Harm in the Absence of an Adequate Legal Remedy

The court is aware that the issuance of injunctive relief in cases involving contractual disputes is not always appropriate when the plaintiff has a legal remedy and can be made whole by money damages.  Generally, however,  harm to the plaintiff is considered "irreparable whe[n] there is no adequate remedy at law, such as monetary damages."  *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citation omitted).  Thus, the issue here, as the court sees it, is not whether Plaintiff can prevail on his fraudulent transfer claim but, instead, whether he has an adequate remedy at law for his breach of contract claims that formed the basis for the issuance of the Ex Parte TRO.  The court concludes that he does not.

As the Fifth Circuit in *Janvey* explained:

[T]he mere fact that economic damages may be available does not always mean that a remedy at law is "adequate." For example, some courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions. *See, e.g., Lee v. Bickell*, 292 U.S. 415, 421, 54 S. Ct. 727, 78 L. Ed. 1337 (1934) ("we are not in doubt, the multiplicity of actions necessary for redress at law [is] sufficient . . . to uphold the remedy by injunction[.]"). We have previously stated that whe[n] a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds. *See Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686-87 (5th Cir.1980) ("[E]ven were [plaintiff's] remedy limited to damages, an injunction may issue to protect that remedy.").

*Id.*

In support of his request for an ex parte TRO, Plaintiff established, and, to date, Noetic has not disputed or come forward with evidence to refute that: (1) Sun Cupid HK and Noetic owe Plaintiff approximately $3.675 million as a result of their breaches of the parties' contracts; (2) that Sun Cupid HK's officers control Noetic; (3) except for Noetic, all Defendants either reside in Hong Kong or are Chinese entities based in Hong Kong;[7] (4) Noetic is the only guarantor of the debt owed by Sun Cupid HK under the SPA and Promissory Note; and (5) the only source of collateral that secures payment of this debt is Noetic itself and the property of Noetic described in the Security Agreement as accounts, chattel papers, inventory, equipment, instruments, investment property, documents, deposit accounts, letter of credit rights, general tangibles; and proceeds of any Noetic property.

Plaintiff has also alleged and demonstrated in support of his request for an ex parte TRO that: (1) Michael Sit, on behalf of Sun Cupid HK, terminated the SPA effective November 30, 2020, the date Sun Cupid HK's second installment payment of $2 million to Mr. Emery was due under the SPA and Promissory Note; (2) in this same letter, Michael Sit indicated Sun Cupid HK's intent to return the shares it purchased from Mr. Emery; (3) approximately two weeks before the second installment payment to Mr. Emery was due and seven days before Michael Sit sent his November 25, 2020 letter to Mr. Emery terminating the SPA and indicating Sun Cupid HK's belief that Noetic was on the verge of bankruptcy and "no longer a going concern," Noetic, at Danny Sit's direction, wire transferred $725,762.50 to Sun Cupid HK in Hong Kong; (4) Danny Sit also established Sun Cupid US on October 21, 2020, approximately one month before Michael Sit sent his November 25, 2020 letter, advising Mr. Emery that Sun Cupid HK was considering creating a new position for him

_____

[7] Sun Cupid US is located in Texas, but it is not a party to or in any way obligated under the parties' contracts. Plaintiff also alleges it is a shell company.

with a significantly reduced salary at a "new entity," under a "new proposed structure"; and (5) that Danny Sit recently directed Noetic's staff to have Sun Cupid HK bill a large Noetic client directly for products and services purchased from Noetic rather than have Noetic bill for the products and services.

These facts, when viewed in totality based on available evidence, indicate that, once they made the strategic decision to terminate the SPA and walk away from Noetic, Sun Cupid HK and the Sits transferred and reduced Noetic's assets to avoid their own liability and a judgment for money owed by Sun Cupid HK and Noetic to Mr. Emery under the Promissory Note and Guaranty. If allowed to further dissipate Noetic's assets, the guaranty by Noetic and security in Noetic's assets under the Guaranty and Security Agreement will become meaningless, and Mr. Emery will be deprived of the benefit of the Guaranty and Security Agreement, which provides for immediate payment by Noetic, without notice or demand by Mr. Emery, of the amounts guaranteed and owed by Sun Cupid HK.  Michael Sit's statement that "[w]e will cooperate with any and all document execution to release and return existing shares held by Sun Cupid [HK]" is of no consolation to Mr. Emery.  If Sun Cupid HK returns the shares it purchased, Mr. Emery will have to look to his own, now insolvent company Noetic, the other party to the Guaranty and Security Agreement and Employment Agreement, for damages caused by the Sits' conduct and decisions, on behalf of Sun Cupid HK and Noetic, to not honor any of the agreements with Mr. Emery.

The court may not know for certain at this time what the Sits' true secret intentions or motives were for the actions they took.  It may be, as Michael Sit states in his letter, that the decision to terminate the SPA and walk away from the entire Noetic transaction was made based on the benefit of hindsight, which would not invalidate any of the Defendants' obligations under the parties' agreements.  Regardless, the circumstances and timing of the actions taken by them and Sun

Cupid HK, and that of Noetic at their direction, strongly suggest that Sun Cupid HK and the Sits engaged in a pattern of behavior to reduce their liability as it pertains to Noetic, and that they did so through different means before notifying Mr. Emery that they were terminating the SPA and would no longer be participating in the Noetic transaction.  Given Noetic's current financial status, which according to Michael Sit is on the verge of bankruptcy, the court also agrees with Plaintiff that he will likely suffer irreparable harm if Defendants are allowed to transfer additional assets of Noetic outside the court's jurisdiction to Hong Kong to Sun Cupid HK, and he is forced to pursue legal redress against Sun Cupid HK or the Sits in a foreign country.

This and the systematic dissipation of Noetic's assets leave Mr. Emery with no adequate remedy at law in the absence of injunctive relief enjoining the further transfer and depletion of Noetic's assets during the course of this litigation, and a meaningful decision on the merits would be impossible without an injunction.  Issuance of the Ex Parte TRO based on Plaintiff's substantial likelihood of succeeding on his contract claims was, therefore, appropriate and necessary to maintain the status quo and protect this court's jurisdiction.  Because the Ex Parte TRO was limited to the assets of Noetic, the court disagrees with Noetic's contention that the terms of the Ex Parte TRO were overly broad.

In this regard, Noetic contends:

> Plaintiff's requested relief does not seek to preserve the status quo. Plaintiff's complaint makes it clear that before November 30, 2020, Noetic was purchasing product from Sun Cupid (HK) and Noetic was issuing payments to Sun Cupid (HK). Emery Declaration paragraph 7 admits the status quo has existed since "early 2000" so a change to the status quo (and it is admittedly difficult to ascertain Emery's testimony on this issue) is not permitted by Rule 65.

Noetic Reply 4-5 (Doc.21).

The evidence submitted by the parties established that Noetic purchased a large portion of the products that it sold to its customers from Sun Cupid HK; that, as a result, Sun Cupid HK was Noetic's largest unsecured creditor; that Noetic has a revolving account with Sun Cupid HK under which it continually purchases products with payment due approximately 30 to 60 days later and, as a result, it was common for Noetic to owe Sun Cupid HK money at any given time. The court, however, agrees with Plaintiff that balances for goods purchased, even if due, does not justify Sun Cupid HK or the Sits' decision to prioritize any unsecured debt Noetic owed to Sun Cupid HK over the secured debt guaranteed and owed by Noetic to Mr. Emery as a result of Sun Cupid HK's breach of the SPA and Promissory Note, particularly in light of evidence regarding the manner in which the parties had always done business in the past under a revolving account order and payment system.

It also does not explain the close timing of the events described above. If anything, the decision made by Danny Sit, who is an officer of both Noetic and Sun Cupid HK, to have Noetic prioritize and pay $725,762.50 to Sun Cupid HK for debt allegedly due and owing as of November 17, 2020, shortly before the second installment payment was due to Mr. Emery, reaffirms in the court's mind the need for the injunctive relief ordered. This determination is further supported by evidence regarding the total control the Sits and Sun Cupid HK have over Noetic's operations and Ms. Coronel's testimony that Danny Sit: (1) directed her to issue a check from Noetic's account to Mr. Emery, signed by him, to pay Sun Cupid HK's first installment of $500,000 under the Promissory Note; and (2) ignored the concern she expressed that transferring $725,762.50 from Noetic's account to Sun Cupid HK would leave insufficient funds in Noetic's account to cover the debt it guaranteed in the event of Sun Cupid HK's default under the agreements with Mr. Emery.

In addition, Mr. Emery submitted a declaration in response to Noetic's motion to dissolve in which he states that, notwithstanding the ongoing purchases of product from Sun Cupid HK and

amounts owed for that product, Noetic was previously profitable because it priced goods it sold to customers at a sufficient mark-up to cover its costs and turn a gross profit after payment of amounts owed to Sun Cupid HK.  According to Mr. Emery's declaration, this changed when Sun Cupid HK and the Sits took over Noetic and adjusted the price of goods to match or nearly match the price that goods were sold to Noetic's customers. Mr. Emery states that, according to the latest financial data available to him for the period ending September 2020, Noetic had gross sales of $14.7, among its best, while the cost of the goods sold was $14.58 million. Mr. Emery states that, because of the adjusted pricing practice put in place by Sun Cupid HK and other accounting practices in not paying other Noetic costs such as payroll, rent, insurance, or even freight shipping charges for product purchased, Noetic has gone from being profitable to operating at loss of more than $2.1 million through September 2020, despite the record sales, and will always owe a balance to Sun Cupid HK.[8]

Plaintiff argues that the Sits have turned Noetic into a "mere pass-through entity" that is used to increase Sun Cupid HK's profits to the detriment of Noetic, which receives zero profit with Noetic continually owing money to Sun Cupid HK for goods at a loss because the price of the goods does not cover the freight charges, which Noetic frequently pays without reimbursement.  Pl.'s Mot. to Convert Ex Parte TRO 6.  Plaintiff, therefore, asserts that Noetic's debt to Sun Cupid HK is "fictitious," and any contention based on Noetic's accounting to Sun Cupid HK is a red herring and amounts to "nothing more than a slight of hand" that Sun Cupid HK has used "***by design***" to ensure that "Noetic's balance sheet remains starved."  *Id.* at  6.

---

[8]  Noetic contends that the statements in Mr. Emery's declaration "that Noetic is not profitable due to the sales prices being charged Noetic's customers" are "wholly conclusory."  Noetic Reply  3 (Doc. 21).  The court disagrees. The statements in Mr. Emery's declaration have sufficient factual support.

**Memorandum Opinion and Order - Page 17**

Plaintiff contends, that, even if Noetic owes Sun Cupid HK millions of dollars for goods purchased, payment of these amounts to Mr. Emery would simultaneously satisfy Noetic's obligation to both Sun Cupid HK and Mr. Emery, as Noetic's obligations to Mr. Emery stem from the debt Sun Cupid HK owes to Mr. Emery.  Thus, according to Plaintiff, Noetic's conduct and asserted reasons for paying only Sun Cupid HK is illogical and not a valid basis for avoiding its obligations to him, and Noetic should not be allowed to "trumpet a constantly churning accounts payable balance sheet as a reason for the Sits or Sun Cupid HK to transfer from Noetic any amount they choose at any time" to avoid the debt owed to him.  *Id.* at 7.

The court agrees and did not find this argument by Noetic, regarding its revolving account balance for products purchased from Sun Cupid HK, particularly persuasive, despite the lengths to which it went during the hearing to drive this point home.  Although Noetic argued that evidence of the large balance owed by Noetic as of December 2019 and continuing through 2020 rebuts Plaintiff's argument that Noetic's profitability declined under Sun Cupid HK's and the Sits' management, the court is not convinced that the balance owed by Noetic to Sun Cupid HK at any particular time is necessarily synonymous with its profitability at that time.

Evidence of the parties' business and contractual relationships and the manner in which Sun Cupid HK and the Sits have operated Noetic since purchasing Mr. Emery's remaining shares provide further support for the court's determination that injunctive relief was and remains necessary given Noetic's steadfast position that it should be allowed to continue operating in the same fashion without restrictions, even if doing so would benefit Sun Cupid HK but harm its own financial viability. This and many of the arguments asserted in Noetic's motion to dissolve would have been more appropriate if made by Sun Cupid HK rather than Noetic, but, instead, Sun Cupid and the Sits are continuing to use Noetic as both a shield and a sword in this case to defend against Mr. Emery's

claims and request for injunctive relief.  In any event, because the evidence shows that the Sits have blurred the distinction between Sun Cupid HK and Noetic, it would be unjust under the circumstances to allow Sun Cupid HK or the Sits to continue to benefit from the declining financial situation of Noetic as a reason to argue against the imposition of injunctive relief that is needed to protect Noetic from further financial deterioration and prevent the further transfer of its assets.

Finally, it is apparent from the parties' arguments and evidence that they dispute the extent of Noetic's assets at the time the SPA was executed in December 2019.  Noetic has also taken the position, without evidentiary support, that Mr. Emery may have misrepresented the extent of Noetic's assets at this time.  Unsupported allegations of fraudulent inducement as a defense to Plaintiff's contract claims, however, are insufficient to rebut Plaintiff's verified factual allegations and evidence.

These disagreements aside, it is apparent from Michael Sit's November 25, 2020 letter that Noetic was in better condition financially when it purchased Mr. Emery's remaining shares in the company in December 2019 than it was after eleven months of Sun Cupid HK's and the Sits' control.  Michael Sit attempts to attribute the blame for Noetic's struggle in 2020 on COVID-19 and indicates that "we have since discovered that [Noetic] has a different net asset calculation than previously expected."  Pl.'s Hearing Ex. F.  Michael Sit's statement, however, that "Sun Cupid [HK] believes that Noetic *is no longer a going concern* and as a large creditor, would recommend bankruptcy proceedings or another [type of] restructuring" indicates that Noetic was, at a minimum, a going concern when Sun Cupid HK and the Sits took over Noetic's operations.  *Id*. (emphasis added).  Evidence of the Sits' heavy involvement in the day-to-day operations of Noetic between 2015 and 2019 also undermines any suggestion by Noetic of fraudulent inducement in 2019 by Mr.

Emery in connection with the agreement for Sun Cupid HK to purchase Mr. Emery's remaining shares. Regardless, all of the agreements at issue contain broad waivers and expressly state that Sun Cupid HK and Noetic waive all defenses other than repayment in full, so any fraudulent inducement claim or defense that these Defendants intend to assert to Plaintiff's causes of action for breach of contract do not affect Plaintiff's entitlement to injunctive relief or justify the dissolution of the Ex Parte TRO.

For all of these reasons, the court will deny Noetic's motion to dissolve or modify the Ex Parte TRO.

## IV.    Motion for Preliminary Injunction (Doc. 14)

### A.    Analysis

The court determines that Plaintiff has met his burden of persuasion as to all four requirements. The court addresses each in turn.

#### 1.    Substantial Likelihood of Success on the Merits

As indicated, the court has construed Plaintiff's consolidated motion to convert the Ex Parte TRO to a preliminary injunction as one based on his causes of action for breach of contract under Texas law. The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). An anticipatory repudiation of a contract consists of "either words or actions by a party to a contract that indicate an intention that he or she is not going to perform the contract according to its terms in the future." *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1984, no

writ). The elements of a claim for anticipatory breach of contract under Texas law are: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citation and footnote omitted).

Plaintiff's verified allegations and the evidence in this case establish the existence of valid contracts between Mr. Emery and Sun Cupid HK (SPA and Promissory Note) on one hand, and Mr. Emery and Noetic (Guaranty and Security Agreement and Employment Agreement) on the other hand; that Plaintiff performed his obligations under all of the agreements; that Sun Cupid HK materially breached the SPA and Promissory Note by terminating the SPA without legal justification and failing to pay the second installment of $2 million owed under the SPA and Promissory Note when it was due on November 30, 2020; and that Noetic breached the Guaranty and Security Agreement in failing to immediately pay all outstanding amounts due, without further notice, under the Promissory Note as a result of Sun Cupid HK's material breach. Additionally, Sun Cupid HK's breach of the SPA, when combined with statements made by Michael Sit in the letter dated November 25, 2020, on Sun Cupid HK's behalf, amount to a anticipatory repudiation and premature termination of the Employment Agreement, without Mr. Emery's consent, before expiration of the term set forth in that contract, which caused the entire balance under the contract to become immediately due and payable upon Mr. Emery's involuntary termination. As a result of Sun Cupid HK's and Noetic's breaches, Plaintiff has suffered injuries totaling approximately $3.675 million.

Based on the foregoing facts and evidence detailed in this opinion and submitted by the parties, the court concludes that Plaintiff has established a substantial likelihood of succeeding on the merits of all of his breach of contract claims. Further, although the contracts were only executed

by Danny Sit on behalf of Sun Cupid HK and Noetic and not any other Defendants, the court determines, contrary to Noetic's assertion, that an injunction against all Defendants is appropriate under Rule 65(d), previously cited in the Ex Parte Order, which expressly binds the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).[9]

### 2.    Substantial Threat of Irreparable Harm

The court, for the reasons already explained in addressing Noetic's motion to dissolve or modify the Ex Parte TRO, determines that Plaintiff has satisfied this requirement, and no further discussion regarding this issue is necessary.

### 3.    Balancing the Threatened Harms

Noetic asserts only one argument that appears to pertain to this factor. Noetic contends that " if injunctive relief is granted, the injunction should be very narrow so that it does not interfere with [its] operations" because "Noetic cannot purchase product if [it] cannot pay Sun Cupid (HK)," and "Sun Cupid (HK) cannot sell product to Noetic if Sun Cupid (HK) cannot purchase product, and Sun Cupid (HK) cannot purchase product if [it] cannot pay for it with funds from Noetic." Noetic's Opposition ¶ 23 (Doc. 11).

By way of example, Noetic asserts that the Ex Parte TRO as currently written "prohibits [it] from making a payment for products to Sun Cupid (HK) and [it] may not allow its Merchants' account balance to go below $1 million." *Id.* ¶ 24. Noetic further asserts that, "[a]s of November 27, 2020, Plaintiff's [sic] bank statement shows a bank balance of $179,447.35," and "[a]s a

---

[9] Additionally, there is an unresolved issue of whether the language of the Guaranty and Security Agreement makes Danny Sit personally liable for the debt owed to Mr. Emery. The parties did not brief this issue, so the court reserves this issue for another day.

practical matter the [Ex Parte TRO] . . . prevents Noetic from paying its bills and conducting business operations until [it] is able to collect over $1.8 million in receivables." *Id.*

This argument is undermined by Plaintiff's and Noetic's evidence regarding the parties' business relationship and the way in which Noetic has been purchasing and paying Sun Cupid HK for product that results in Noetic usually owing a balance of some amount to Sun Cupid HK at any given point in time. The argument also fails to account for Noetic's evidence that Noetic continued to operate and receive shipments of product from Sun Cupid HK during 2020, even though the balance owed by it when Sun Cupid HK terminated the SPA was similarly as large as the balance in December 2019 when Sun Cupid HK agreed to purchase Mr. Emery's remaining shares in Noetic.

Additionally, Plaintiff's evidence that Noetic was starved of assets as a result of the pricing practice and other "robbing Peter to pay Paul" accounting practices put in place by Sun Cupid HK and the Sits in 2020 that has benefited Sun Cupid HK to the detriment of Noetic indicates that Noetic's current financial situation is the product of Sun Cupid HK's and the Sits' management of Noetic. Under these circumstances, it would be unfair to allow Sun Cupid HK and the Sits to benefit from the situation they created and for the court to forego the issuance of an injunction. Further, the threatened harm to Plaintiff far outweighs any potential threatened harm to Sun Cupid HK and the Sits in continuing to ship product to Noetic.

If Sun Cupid HK stops all shipments of product to Noetic and terminates its exclusive seller rights, as threatened, until Noetic "can demonstrate sufficient resources," Noetic will more than likely cease to be a viable business because, as of November 25, 2020, when Sun Cupid HK terminated the SPA, Sun Cupid HK was Noetic's largest supplier of product. If this happens, Noetic will not be able to pay its bills and conduct business operations. Moreover, if Noetic, the only

source of collateral provided by Sun Cupid HK to secure its indebtedness, goes out of business because it is no longer able to generate income through the sale of products, Mr. Emery, for the reasons already explained, will not have an adequate legal remedy.  Sun Cupid HK and the Sits, on the other hand, will simply be required to operate Noetic and Sun Cupid HK in the same manner consistent with how the parties have done business in the past to maintain the status quo during this litigation.

Moreover, although this argument was asserted by Noetic, there is no evidence that it will suffer harm of any sort if Sun Cupid HK and the Sits are enjoined from stopping shipments of product to it and allowing the balance of its Merchants' account to go below $1 million USD without agreement from Plaintiff  or court approval.  Noetic also fails in its reply to address Plaintiff's request to increase the balance of Noetic's Merchants' account to prevent it from going below $3.675 million, the amount alleged to be owed by Sun Cupid HK and Noetic.  If Noetic, Sun Cupid HK, or the Sits disagree and wish to avoid a preliminary injunction, the solution is simple—they can voluntarily deposit into the registry of the court the amount that Plaintiff alleges is owed to him under the various agreements pending resolution of this litigation ($3.675 million)—which would moot the need for an injunction.

### 4.    Public Interest

For the reasons explained in issuing the Ex Parte TRO,  the court concludes that the public interest will also be served by ensuring Defendants' performance under the parties' contractual agreements, as the public expects parties to honor their contractual obligations.

V.     **Plaintiff's Opposed Motion for Leave to Amend Appendix (Doc. 19)**

Plaintiff filed this motion seeking to correct the order of the exhibits in his appendix to his consolidated motion.  Plaintiff also indicates that he seeks leave to submit a signed copy of the amended verification submitted in support of his consolidated motion.  The motion indicates that it is opposed by Noetic; however, Noetic did not file a written response or address the issue during the approximate four-hour hearing held on December 14, 2020, even though the court gave the parties significant leeway and allowed them to put on any arguments and evidence they wished without imposing any time restrictions.  Regardless, Plaintiff's request to amend his appendix to correct the order of the exhibits appears to be moot in large part, as many of the same documents were admitted as exhibits during the hearing.  Also, the amended verification was signed by Mr. Emery, so there was no need to amend on this basis, and the court did not consider this amended verification in ruling on Noetic's motion to dissolve the Ex Parte TRO.  The court also noticed that the declaration by Mr. Emery included in his original appendix was not signed, whereas the declaration in the proposed amended appendix was signed.  Thus, it appears Plaintiff mistakenly referred to his verification in the motion for leave.

As noted, Noetic was given the opportunity to respond and voice its opposition to Plaintiff's motion in its reply in support of its motion to dissolve and opposition to the Ex Parte TRO and did express some other unrelated objections regarding the timing and substance of Plaintiff's consolidated motion and response in opposition to Noetic's motion to dissolve.  Additionally, the court determines that Noetic will not suffer any legal prejudice if the motion is granted. Accordingly, the court will grant Plaintiff's motion for leave to amend its appendix.

## VI.    Noetic's Miscellaneous Objections

As indicated, Noetic in its motion to dissolve and opposition to the Ex Parte TRO asserted objections to the timing and substance of substance of Plaintiff's consolidated motion and response in opposition to Noetic's motion to dissolve.  The court **overrules** these objections.  Noetic has not shown that it suffered any legal prejudice from the one-day delay in Plaintiff responding to Noetic's filings.  If Noetic thought it needed additional time to respond to Plaintiff's filings, it could have requested a brief continuance, and the docket sheet indicates that it granted itself a one-day continuance in filing its reply.  Given the expedited nature of the proceedings, the court does not believe either party intentionally delayed the proceedings in this case or failed to act diligently. To hold otherwise exalts form over substance. Further, the matters in Plaintiff's consolidated motion and response in opposition to Noetic's motion to dissolve that Noetic contends are outside of the pleadings are responsive to the arguments raised by it.

## VII.    Conclusion and Preliminary Injunction

For the reasons stated, the court **denies** Defendant Noetic, Inc.'s Motion to Dissolve or Modify Ex Parte Temporary Restraining Order (Doc. 10); and **grants** Plaintiff Steve Emery's Consolidated Motion to Amend and Convert Ex Parte TRO to a Preliminary Injunction (Doc. 14) as to all Defendants to the extent set forth in this opinion.[10] The court also **grants** Plaintiff's Opposed Motion for Leave to Amend Appendix (Doc. 19) and **directs** the clerk of the court to file

---

[10] Plaintiff's request to amend the injunctive relief to include a statement that he "may draw from Noetic's accounts sufficient funds to pay his attorneys, as required by the SPA, Note, and Guaranty" (Doc. 15 at 9) is **denied without prejudice**. While these agreements provide for the recovery or payment of attorney's fees, the court does not interpret the agreements, as written, to provide for the payment of attorney's fees by Noetic or any other Defendant prior to the resolution of this litigation. The court also omitted two other additional conditions requested by Plaintiff because it believes that any decision by Defendants to pay Mr. Emery during the course of this litigation to reduce the amount required to be maintained in Noetic's Merchants' account can be addressed by separate agreement.

as a separate document the attachment to Plaintiff's Opposed Motion for Leave to Amend Appendix (Doc. 19).

Based on the findings and conclusions in this memorandum opinion and order, the court **converts** the Ex Parte TRO to a Preliminary Injunction, which **shall** remain in effect during the pendency of this litigation until dissolved or the court for good cause issues a permanent injunction. Accordingly, the court **enjoins** Defendants as follows:

While this preliminary injunction is in effect, Defendant Noetic, Inc. is **enjoined** from transferring any funds to Defendant Sit Pan Jit a/k/a/ Michael Sit or Defendant Danny York Hoi Sit, or any entity owned or controlled by one or both of them (whether directly or indirectly), including but not limited to Sun Cupid Technology (HK) Limited or related entities, including Sun Cupid America, LLC; Noetic, Inc. is **enjoined** from allowing the balance of the Merchants' account to go below **$3.675 million** USD without agreement from Plaintiff Steve Emery or court approval; Sun Cupid Technology (HK) Limited is **enjoined** from unilaterally withholding or refusing to ship inventory and withholding billing and collection actions in contravention of normal and standard procedures that were in effect between Sun Cupid (HK) Limited and Noetic before November 25, 2020; and Defendants (and any persons or entities acting on their behalf or at their direction) are **enjoined** from transferring any operations or assets from Noetic to Sun Cupid America, LLC. Pursuant to Rule 65(d), this order binds the parties enjoined, their officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A)-(B). The $10,000 bond that the court ordered in issuing the Ex Parte TRO remains in effect, and the court determines that an increase in the bond amount is not warranted.

**Memorandum Opinion and Order - Page 27**

As previously noted by the court, there is currently pending a motion to dismiss for lack of personal jurisdiction.  The court will consider this and other pending motions as expeditiously as possible once the motions become ripe.  If the court determines that it lacks personal jurisdiction over any Defendant, it will either dismiss the action without prejudice as to any Defendant for which personal jurisdiction is lacking, or sever that portion of the action and transfer it to a court that has personal jurisdiction of such Defendant.  Also, if personal jurisdiction is lacking over any Defendant, the court will dissolve the preliminary injunction as to such Defendant.

**It is so ordered** this 23rd day of December, 2020.


Sam A. Lindsay
United States District Judge